UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DONNELLE D. BRAND,<br><br>Defendant. | No. 20-cr-213 |

MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Donnelle D. Brand's Motion for Relief. *See* Def.'s Mot. Relief, ECF No. 37. Mr. Brand asks the Court to order the District of Columbia Department of Motor Vehicles ("D.C. DMV") to allow him to contest the erroneous administrative finding that led to the revocation of his driver's license. *See* Def.'s Mem. Supp. Mot. Relief ("Def.'s Mem.") 6, ECF No. 38. Obtaining a license is essential in the pursuit of Mr. Brand's livelihood and required for his compliance with court-ordered terms of supervised release. For the reasons set forth herein, the Court GRANTS Defendant's Motion for Relief and hereby ORDERS the D.C. DMV to provide Mr. Brand with a hearing to contest the deprivation of his driver's license.[1]

I.  BACKGROUND

A.  Mr. Brand's Supervision and Terms of Release

This matter stems from Mr. Brand's alleged violations of the terms of his supervised release. *See* Probation Pet. ("Pet."), ECF No. 29. On June 14, 2024, Judge Kollar-Kotelly referred the matter to the undersigned. *See* Min. Order (June 14, 2024). Between July 29, 2024

---

[1] The Court directs counsel for Mr. Brand to send a copy of this order to the D.C. DMV.

1

and January 13, 2025, the undersigned held six separate status hearings to monitor Mr. Brand's reentry progress.

One of Mr. Brand's conditions of supervision required that he "work full time (at least 30 hours per week) at a lawful type of employment." Pl.'s Judgment 5, ECF No. 19. The condition further required that he "try to find full-time employment" if he is unemployed. *Id.* The Court inquired about Mr. Brand's compliance with this condition. Mr. Brand indicated that it was virtually impossible to seek or obtain a job without a driver's license, let alone get to/from work. His counsel echoed this, explaining that reinstatement of Mr. Brand's driver's license would open a "world of employment opportunities." In turn, the Court ordered Mr. Brand to obtain a driver's license to facilitate compliance with its prior order mandating he seek and obtain employment.

However, resolution of the pending probation petition has been stalled by the D.C. DMV's refusal to issue Mr. Brand his driver's license. Since August 8, 2024, Mr. Brand, pro bono counsel Ms. Amber Hammond, and Assistant Federal Public Defender Ms. Sandra Roland have taken on the Sisyphean task of trying to reobtain Mr. Brand's D.C. driver's license. Despite the law and equity being on their side, they have come up empty-handed time after time. This is through no fault of their own. At each hearing, Mr. Brand's team has detailed the numerous roadblocks and moving goal posts they have encountered.

Now—one year later—the D.C. DMV continues to thwart this Court's order for no apparent reason.

B.  Mr. Brand's Driver's License Revocation

On April 15, 2023, Mr. Brand was in a single-car accident in Maryland. He suffered severe injuries to his lungs and chest, including "[c]losed displaced fracture of sixth cervical

2

vertebra, unspecified fracture morphology, . . . [c]ontusion of both lungs, . . . and [s]ternal fracture with retrosternal contusion." *See* Def.'s Mem., Ex. C, April 15, 2023 Hospital Admission ("Hospital Admission") at 1–2, ECF No. 38-3.

Maryland law enforcement arrived at the scene of the accident. They suspected Mr. Brand of having committed a crime—likely after discovering he was on supervision which typically leads authorities to a presumption of guilt—here, driving under the influence. *See* Michelle Alexander, *The New Jim Crow: Mass Incarceration in the Age of Colorblindness* 99 (10th anniversary ed. 2020) ("Once a person is a labeled a felon, [they are] ushered into a parallel universe in which discrimination, stigma, and exclusion are perfectly legal. It does not matter whether [they] have actually spent time in prison; [their] second-class citizenship begins the moment [they] are branded a felon."). Mr. Brand passed all field sobriety tests "including standing on one leg, tracking the officer's finger with his eyes, and walking in a line." *See* Def.'s Mem. at 3 n.2. However, due to his injuries, he physically could not blow into the breathalyzer (*i.e.*, chemical testing). This is unsurprising. "Any form of crushed chest [injuries] is likely to result in respiratory failure." G.M. Copland, R.E. Donevan, & B.F. Ford, *Respiratory Failure: What Is It and How Do I Treat It?*, 22 Can. Fam. Physician 265, 266 (1976); Sarah G. Hammond, *Chest Injuries in the Trauma Patient*, 25 Nursing Clinics N. Am. 35, 35 (1990) ("Chest trauma can disrupt the normal physiologic mechanisms in any of these three areas [airway, breathing, and circulation]."). Despite the facts pointing otherwise, law enforcement still issued Mr. Brand a citation.

Cooler heads subsequently prevailed. On June 7, 2023, Maryland prosecutors declined to prosecute the case. *See* Def.'s Mem., Ex. A, District Ct. Maryland Prince George's County Case Summ. ("Maryland Case Summ."), ECF No. 38-1. However, Mr. Brand's Kafkaesque journey

3

was just beginning. The Maryland Department of Transportation Motor Vehicle Administration ("Maryland MVA") erroneously sent a notice of "Out-of-State Conviction" to the D.C. DMV. *See* Def.'s Mem., Ex. B, Maryland MVA Out-of-State Conviction Report, ECF No. 38-2. This notice incorrectly reported that Mr. Brand was convicted of the Maryland charge on May 31, 2023. *See id.*

The D.C. DMV compounded Maryland's mistake. Specifically, D.C. Code § 50-1905(a)(2) provides that a person who refuses chemical testing, regardless of the reason, shall be punished "upon receipt of a sworn report of the law enforcement officer that he or she had reasonable grounds to believe the arrested person had been driving . . . [while] intoxicated or while the person's ability to operate a motor vehicle was impaired by the consumption of alcohol or a drug or a combination thereof." *See* D.C. Code § 50-1905(a)(2). The D.C. Code does not appear to take physical inability into account.[2] And presumably, the D.C. DMV thought there was reasonable ground to conclude that Mr. Brand was driving under the influence based on the erroneous report of conviction it received from the Maryland MVA.

The punishments for a violation of D.C. Code § 50-1905(a)(2) include: revocation of driving privileges for 12 months; denying the issuance of a license for 12 months, if the person is without a license to operate a motor vehicle in the District; *or* require enrollment in the Ignition Interlock System Program ("IISP"). *See* D.C. Code § 50-1905(a)(2). The D.C. DMV both

---

[2] Many states recognize physical inability a valid reason to refuse chemical testing. For example, Pennsylvania courts have held: "[w]ith regard to a driver's physical inability to take the [chemical] test, each case must be decided on its individual facts. Medical evidence of a driver's physical incapacity is not a per se requirement. Where a driver's physical incapacity is obvious, there is no need for the driver to present medical evidence to prove it. In determining the obviousness of a driver's incapacity, a court does not leave [its] common sense at home." *Carlin v. Commw. of Pennsylvania, Dep't of Transp., Bureau of Driver Licensing*, 739 A.2d 656, 659 (Pa. Commw. Ct. 1999) (internal quotation marks and citation omitted).

revoked Mr. Brand's license and refuse to allow him to reobtain his license until he completes a 12-month enrollment in IISP. *See* Def.'s Mem. at 1. IISP essentially places a breathalyzer attached to the steering wheel among other features. *See What is an Ignition Interlock Device?*, LifeSafer, https://www.lifesafer.com/ignition-interlock-devices/what-is-an-ignition-interlock/ (last visited Aug 22, 2025). The program requires an upfront installation fee of $70 to $170 and $50 to $120 per month to lease the device. *See Ignition Interlock Cost*, LifeSafer, https://www.lifesafer.com/ignition-interlock-cost/ (last visited Aug 22, 2025). Mr. Brand could not afford this expense.[3] *See* Def.'s Mem. at 4.

The D.C. DMV mailed Mr. Brand the § 50-1905(a)(2) order revoking his license and requiring participation in IISP. *See id.* at 3. The D.C. DMV mailed the notice to the D.C. Mayor's Office of Returning Citizens Affairs ("MORCA"). *See id.* at 2. Mr. Brand had listed his home address on his driver's license as MORCA's address because he was a returning citizen with unstable housing. *See id.* But changes at MORCA led to MORCA refusing to accept returning citizens' mail. *See id.* Thus, Mr. Brand's order was returned as undeliverable. *See id.* As such, Mr. Brand did not learn about the revocation of his license until he tried to obtain a

---

[3] Preserving public safety with sober drivers is an important state interest. But charging for IISP enrollment is a net negative. Poor people cannot afford the program, which prevents them from get their driver's licenses. Without their licenses, they cannot find quality employment. So, they are stuck in poverty. Setting aside how offensive this is, poverty is an equally concerning public safety problem. *See* Barry Friedman, *What Is Public Safety*?, 102 B.U. L. REV. 725, 745 (emphasizing that "[p]eople who cannot afford the very basic necessities of life, such as food and housing, are not safe").

A simple solution would be to offer IISP for free. Presumably, creating the least amount of friction to ensuring sober drivers on the road is the goal (not to mention higher tax revenue from people climbing out of poverty). Instead, the state traps its poor citizens in a cycle of poverty.

5

Maryland driver's license.[4] *See id.* at 3–4. At that point, the 10-day window to contest the order had long since closed. *See infra.*

## II. DISCUSSION

Mr. Brand's possession of a driver's license is no mere convenience; it is essential. *See Bell v. Burson*, 402 U.S. 535, 539 (1971). Judge Kollar-Kotelly previously found that a driver's license holds a significant property interest, the deprivation of which implicates a person's due process rights. *See Parham v. District of Columbia*, 648 F. Supp. 3d 99, 107 (D.D.C. 2022), *vacated on other grounds.* This is because of the need for a driver's license to complete everyday tasks: "[d]ropping children off at childcare, attending doctor's appointments, caring for elderly relatives, running errands, and even traveling to and from a place of *employment* become challenges." *Id.* at 104 (emphasis added). Indeed, "[w]ithout a valid driver's license, it is dramatically harder for DC residents to find and sustain employment." *Driving DC to Opportunity: Report FAQs*, Tzedek DC (Apr. 2021), https://www.tzedekdc.org/report-faqs; "Driving remains the most common way for workers to commute to their jobs in the DC region," and having one's driver's license revoked "exposes DC residents who need to drive to the risk of criminal prosecution and jail." *Id.*; *See also* Henry Grabar, *States Have Trapped Millions Of Americans In Crippling Debt By Taking Away Their Driver's Licenses*, Slate (Sept. 27, 2017), https://slate.com/business/2017/09/state-lawmakers-have-trapped-millions-of-americans-in-debt-by-taking-their-licenses.html. Thus, without a license, Mr. Brand faces an undue barrier to securing employment. Unemployment puts him both at risk of poverty, which carries countless

---

[4] Mr. Brand cannot obtain a Maryland driver's license. The Maryland MVA will not allow Mr. Brand to obtain a Maryland driver's license because of the D.C. DMV's revocation of Mr. Brand's D.C. license—which it bears repeating was predicated on an incorrect charge that was never prosecuted. *See* Def.'s Mem. at 4.

attendant harms, and in violation of his court-ordered conditions of supervised release, which carries severe consequences, including incarceration. But there is an offramp to Mr. Brand's nightmare: a hearing.

    A.    <u>Due Process</u>

        i.    *Legal standard*

The Fourteenth Amendment's Due Process Clause provides that no State shall "deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "The Supreme Court has recognized a protected property interest in retaining a driver's license." *Parham*, 648 F. Supp. 3d at 107. This is because "[o]nce licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases, the licenses are not to be taken away without [] procedural due process." *Bell*, 402 U.S. at 539. "That the Due Process Clause applies to a state's suspension or revocation of a driver's license is clear." *Mackey v. Montrym*, 443 U.S. 1, 10 n.7 (1979).

Due process requires (1) notice, (2) an opportunity to be heard, and (3) impartiality before denying life, liberty, or property. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The D.C. code has due process notice and hearing requirements for driver's license revocation orders. Such orders only take effect 10 days "after service of notice on the person whose license or privilege to drive in the District of Columbia is to be revoked." D.C. Code § 50-1906(a). In turn, that person can "request for a hearing [on the revocation] within 10 days . . . of service of the notice." *Id.* Here, the D.C. DMV failed both to provide notice or an opportunity to be heard.

7

      ii.      *Failure to provide notice*

When notice is due, "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315. The D.C. DMV's single inadequate effort here resulted in its notice being returned as undeliverable. "We do not think that [an agency] who actually desired to inform a real [driver's license holder] of an impending [revocation of his license] would do nothing when a [] letter sent to the [license holder] is returned." *Jones v. Flowers*, 547 U.S. 220, 229 (2006). Indeed, "when a letter is returned by the post office, the sender will ordinarily attempt to resend it, if it is practicable to do so. This is especially true when, as here, the subject matter of the letter concerns such an important and irreversible prospect as the loss of a [driver's license]." *Flowers*, 547 U.S. at 230.

The notice failure is particularly egregious here. The D.C. Mayor's office has oversight of both license revocation hearings and MORCA. As such, the D.C. Mayor's delegate, the DMV, should have known that mailing Mr. Brand's notice to MORCA would be unsuccessful given MORCA's changes in processes in receiving mail for returning citizens. Thus, the D.C. Mayor's office chose a method of notice that had zero possibility of success. In doing so, the D.C. DMV failed to provide Mr. Brand with timely, constitutionally-required notice of his license revocation. *See supra*.

      iii.      *Failure to provide opportunity to be heard*

"Procedural due process requires that a fair hearing be held prior to permanent suspension of a driver's license." *Gilles v. Touchstone*, 676 F. Supp. 341, 344 (D.D.C. 1987). Here, Mr. Brand never had a hearing. "The risk of erroneous deprivation due to [DMV] errors would be mitigated with the opportunity for a hearing." *Parham*, 648 F. Supp. 3d at 113.

8

      iv.    *Remedy*

The remedy for these due process violations is the D.C. DMV granting Mr. Brand a hearing. *Cf. Gilles*, 676 F. Supp. at 344 (finding that the plaintiff's due process right was not violated since they were given an opportunity to contest the charges). A hearing would allow him to challenge the chemical testing refusal/DUI adjudication by demonstrating that he could not blow into the breathalyzer due to his injuries and that he passed all other field sobriety tests. *Cf. Parham*, 648 F. Supp. 3d at 113; *Wall v. Babers*, 82 A.3d 794, 802–03 (D.C. Ct. App. 2014) (denying plaintiff's due process challenge where "there were no contested facts that needed to be resolved at a past-deprivation hearing"). "[Mr. Brand's] interest in his driver license . . . may not [be] take[n] away without satisfying the requirements of the due process guarantee of the Fourteenth Amendment." *Mackey*, 443 U.S. at 20.

    B.    <u>Supervised Release Requirements</u>

      i.    *Legal standard*

The All Writs Act empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a). Courts can "issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977). Courts may thus issue writs they deem necessary for justice, including compelling action by government officials and agencies. *See In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022). When "there is a gap in the law, resort to the All Writs Act is appropriate." *In re Application of the U.S. for an Order Pursuant to 28 U.S.C. § 1651(a) for Order Precluding Notice of Grand Jury Subpoena*, No. 17-mc-1604, 2017 WL 3278929, at *1 (D.D.C. July 7,

2017). One such gap is when "an adequate alternative remedy" is unavailable. *LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, No. 25-cv-542, 2025 WL 1454010, at *34 (D.D.C. 2025).

### ii. *All Writs Act mandates a hearing on DUI / chemical testing allegations*

The All Writs Act empowers this Court to take action to enforce its orders that Mr. Brand obtain employment and his driver's license. To that end, this Court also orders the D.C. DMV to grant Mr. Brand a hearing pursuant to the All Writs Act.[5] Providing Mr. Brand with the opportunity to be heard is "in aid of [this Court's] respective jurisdiction[]" and necessary to "achieve the rational ends of law." 28 U.S.C. § 1651(a); *New York Telephone Co.*, 434 U.S. at 173. Affording Mr. Brand a hearing is both necessary to ensure "the ends of justice" and "appropriate in aid of [this Court's] respective jurisdiction[]." *New York Telephone Co.*, 434 U.S. at 173; 28 U.S.C. §1651(a). Indeed, the ends of justice would seemingly dictate a quick end to such hearing in Mr. Brand's favor considering his success on field sobriety tests and his "physical incapacity [precluding a chemical test was] obvious." *Carlin*, 739 A.2d at 659. And given that the Maryland MVA has denied Mr. Brand a Maryland driver's license because of the D.C. DMV's revocation, there is no "adequate alternative remedy" available to Mr. Brand. *LeBlanc*, No. 25-542, 2025 WL 1454010, at *34. On the flip side, requiring Mr. Brand to pay thousands of dollars to participate in the 12-month IISP would be a grave miscarriage of justice. This is especially true given the lack of evidence supporting the allegation that Mr. Brand was intoxicated.

---

[5] If the D.C. DMV fails to comply, the Court will issue a show cause order requiring the D.C. DMV to demonstrate why it is prohibiting Mr. Brand from receiving a hearing.

C. <u>All Writs Act Mandates a Hearing on Other Driving Infraction Allegations</u>

Pro bono counsel for Mr. Brand also flagged that the D.C. DMV had indicated that Mr. Brand's outstanding traffic infractions (*i.e.*, speeding and parking tickets) may prevent him from acquiring a driver's license. *See* Maryland Case Summ. However, these tickets should not be (another) barrier to Mr. Brand receiving his driver's license. Judge Kollar-Kotelly previously enjoined enforcement of Washington D.C.'s Clean Hands Law[6] under similar circumstances. *See Parham*, 648 F. Supp. 3d at 116 (holding that Clean Hands Law likely violated due process rights of D.C. residents; and finding that this law harmed people who were "unable to afford the fines and fees imposed by the District").

Forcing Mr. Brand to "contend with additional burdens imposed by not having [a] license [because of traffic infractions]" would be a profound injustice. First, D.C. DMV issued many of these tickets while Mr. Brand was incarcerated. He could not have committed traffic violations while trapped behind bars. Second, Mr. Brand contests notice of the remaining tickets. For the reasons described above, the D.C. DMV cannot make traffic infractions a "barrier [to Mr. Brand] receiving . . . a license renewal" without "afford[ing] [him] any opportunity . . . to be heard." *See Parham*, 648 F. Supp. 3d at 109, 112. Therefore, to "ensur[e] that [Mr. Brand is] not erroneously stripped of [his] license[]," due process and the All Writs Act require that the D.C. DMV provide Mr. Brand with a hearing to contest the traffic infractions.[7] *See id.* at 113.

---

[6] This law disqualifies applicants from obtaining or renewing driver's licenses if they owe more than $100 in parking, traffic, or other fines and fees. *See* D.C. Code § 47-2861, et seq.

[7] Mr. Brand appears to be an ideal candidate for MORCA's Pathways program for ticket fines forgiveness/reduction.

11

## III.     CONCLUSION[8]

If this year-long nightmare is how a person with the benefit of appointed and pro bono counsels is treated, what hope is there for the thousands of poor people who are not so lucky?

Date: September 12, 2025

                                                                                            ZIA M. FARUQUI
                                                                                            UNITED STATES MAGISTRATE JUDGE

---

[8] The parties are hereby advised that, under the provisions of Local Criminal Rule 59.1(b) of the U.S. District Court for the District of Columbia, any party may file written objections for consideration by the district judge within fourteen days of the party's receipt of this Order. The written objections must specifically identify the portion to which objection is made and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 144–45 (1985).